## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

STATEMENT OF JURISDICTION ......................................................................... 2

QUESTION PRESENTED ....................................................................................... 2

STATEMENT OF THE CASE ................................................................................. 3

STATEMENT OF FACTS ........................................................................................ 3

SUMMARY OF ARGUMENT ................................................................................ 6

STANDARD OF REVIEW .................................................................................... 10

ARGUMENT ......................................................................................................... 10

    I.      SLUSA Precludes State-Law Class Actions That Allege Misconduct "In Connection With" The Purchase Or Sale Of Securities ......................................... 10

          A.     "In Connection With" Means The Same Thing In SLUSA And In Section 10(b) Of The Exchange Act ............................................ 12

          B.     The "In Connection With" Requirement Is Met If The Alleged Misconduct And A Securities Transaction "Coincide" ........................... 13

    II.     The Investors Allege Misconduct "In Connection With" The Purchase Or Sale Of Securities By Market Timers .................................................................... 15

          A.     The Alleged Misconduct Coincided With The Market-Timing Transactions ................................................................................. 16

          B.     Claims In Which The Plaintiff Is Not A Purchaser Or Seller Are Not Exempted From SLUSA ...................................................... 17

          C.     Claims That Are Not Actionable Under Federal Law Are Not Exempted From SLUSA ............................................................... 23

    III.    The Investors Allege Misconduct "In Connection With" The Purchase Or Sale Of Securities By The Investors And Putative Class Members ..................... 25

          A.     The Alleged Misconduct Coincided With The Investors' Investments .................................................................................. 25

          B.     Claims By "Buy And Hold" Investors Are Not Exempted From SLUSA ........................................................................................ 27

CONCLUSION ...................................................................................................... 29

# TABLE OF AUTHORITIES

Cases

*A.C. Frost & Co. v. Coeur d'Alene Mines Corp.*, 312 U.S. 38 (1941) ............................................ 21

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) ........................................... 14

*Am. Tobacco Co. v. Patterson*, 456 U.S. 63 (1982) ........................................................................ 25

*Behlen v. Merrill Lynch*, 311 F.3d 1087 (11th Cir. 2002), *cert. denied*, 539 U.S. 927
   (2003) ....................................................................................................................... 11, 22, 26

*Blaz v. Belfer*, 368 F.3d 501 (5th Cir. 2004) ................................................................................... 12

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) ............................................ passim

*Cape Ann Investors LLC v. Lepone*, 296 F. Supp. 2d 4 (D. Mass. 2003) ..................................... 28

*Carpenter v. United States*, 484 U.S. 19 (1987) ............................................................................ 17

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994) ..................... 24

*Chiarella v. United States*, 445 U.S. 222 (1980) ........................................................................... 19

*Chicago, R.I. & P. R. Co. v. Stude*, 346 U.S. 574 (1954) .............................................................. 21

*Clinton v. Jones*, 520 U.S. 681 (1997) ............................................................................................. 4

*CSX Transp. v. Easterwood*, 507 U.S. 658 (1993) ........................................................................ 24

*D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93 (2d Cir.), *cert. denied*, 534 U.S.
   1066 (2001) ................................................................................................................................. 21

*Deutschman v. Beneficial Corp.*, 761 F. Supp. 1080 (D. Del. 1991) ............................................ 27

*Dudek v. Prudential Sec., Inc.*, 295 F.3d 875 (8th Cir. 2002) ................................................... 9, 26

*Eason v. General Motors Acceptance Corp.*, 490 F.2d 654 (7th Cir. 1973) ................................. 19

*Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002) ......................................... 7, 13, 15, 16

*Feitelberg v. Merrill Lynch & Co.*, 234 F. Supp. 2d 1043 (N.D. Cal. 2002), *aff'd*, 353
   F.3d 765 (9th Cir. 2003) ...................................................................................................... 12, 15

*Firstar Bank v. Faul*, 253 F.3d 982 (7th Cir. 2001) ...................................................................... 13

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983) .................... 21

*Grabow v. PricewaterhouseCoopers LLP*, 313 F. Supp. 2d 1152 (N.D. Okla. 2004) .................22

*Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002) ..........................................................8, 22

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)..........................................................................13

*Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 189 F. Supp. 2d 14 (S.D.N.Y. 2001) ........................................................................................................................................28

*Herndon v. Equitable Variable Life Ins. Co.*, 325 F.3d 1252 (11th Cir. 2003) ...........................12

*Holmes v. SIPC*, 503 U.S. 258 (1992) ..........................................................................8, 19, 20

*In re Ivy*, 901 F.2d 7 (2d Cir. 1990).............................................................................................4

*Int'l Armor & Limousine Co. v. Maloney Coachbuilders, Inc.*, 272 F.3d 912 (7th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002)..........................................................................21

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993 (C.D. Cal. 2002).........................................................................................................................12, 26

*Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001)........................11, 21, 24

*Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323 (7th Cir. 1995).............................10

*Michigan v. Dept. of Treasury*, 489 U.S. 803 (1989) ...................................................................20

*In re Mutual Funds Inv. Litig.*, 310 F. Supp. 2d 1359 (J.P.M.L. 2004).........................................3

*Norris v. Wirtz*, 719 F.2d 256 (7th Cir. 1983).............................................................................22

*Ontario Pub. Serv. Empl. Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004)...........................................................................................................19

*Patenaude v. Equitable Life Assur. Soc.*, 290 F.3d 1020 (9th Cir. 2002)..................................11, 24

*Prof'l Mgmt. Assocs. v. KPMG LLP*, 335 F.3d 800 (8th Cir. 2003)..................................10, 27, 28

*Riley v. Merrill Lynch, Pierce, Fenner & Smith*, 292 F.3d 1334 (11th Cir.), *cert. denied*, 537 U.S. 950 (2002)..........................................................................10, 11, 12, 22, 26, 28

*SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963)...........................................14

*SEC v. Jakubowski*, 150 F.3d 675 (7th Cir. 1998)...................................................................17

*SEC v. Zandford*, 535 U.S. 813 (2002)................................................................................passim

*In re Silicon Graphics Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)................................................11

*Stevens v. Umsted*, 131 F.3d 697 (7th Cir. 1997) ........................................................................12

*Sutter v. Groen*, 687 F.2d 197 (7th Cir. 1982) ..........................................................................24

*United States v. Naftalin*, 441 U.S. 768 (1979) ........................................................................20

*United States v. O'Hagan*, 521 U.S. 642 (1997) ............................................................... *passim*

*Woodbury v. Nationwide Life Ins. Co.*, No. 04-C-373 (S.D. Ill. July 30, 2004) ............................3

*Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598 (D. Del. 2002) ............................................28

**Statutes**

Insider Trading and Securities Fraud Enforcement Act of 1988:

    15 U.S.C. § 78t-1 ........................................................................................................17

Investment Company Act of 1940:

    15 U.S.C. § 80a-2(a)(41)(B)(ii) ..................................................................................5

Judicial Code:

    28 U.S.C. § 1291 .........................................................................................................2

    28 U.S.C. § 1441(b) ..................................................................................................21

Private Securities Litigation Reform Act of 1995:

    15 U.S.C. § 77z-1 ......................................................................................................11

    15 U.S.C. § 78u-4 ......................................................................................................11

Securities Exchange Act of 1934:

    15 U.S.C. § 78j(b) ......................................................................................................13

Securities Litigation Uniform Standards Act of 1998:

    15 U.S.C. § 77p(b) .............................................................................................5, 12, 29

    15 U.S.C. § 77p(c) ....................................................................................................2, 3

    15 U.S.C. § 78bb(f)(1) ......................................................................................5, 12, 29

    15 U.S.C. § 78bb(f)(2) ...............................................................................................2, 3

    15 U.S.C. § 78bb(f)(3) ................................................................................................24

15 U.S.C. § 78bb(f)(4) ............................................................................................................24

15 U.S.C. § 78bb(f)(5)(B)(i) ....................................................................................................12

15 U.S.C. § 78bb(f)(5)(C)........................................................................................................24

**Regulations**

17 C.F.R. § 240.10b-5.............................................................................................................13

17 C.F.R. § 270.2a-4(a) ............................................................................................................5

**Other Authorities**

H.R. Conf. Rep. No. 105-803 (1998).........................................................................................11

H.R. Rep. No. 104-369 (1995)...................................................................................................10

O'Neal, *Purchase and Redemption Patterns of US Equity Mutual Funds*, Financial
Management 63 (Apr. 1, 2004)..............................................................................................27

S. Rep. No. 105-182 (1998).................................................................................................11, 23

SEC Div. of Inv. Mgmt., *Letter to the ICI Regarding Valuation Issues*, 2001 SEC No-
Act. LEXIS 543 (Apr. 30, 2001)..........................................................................................4, 5

SEC Rel. No. 33-7512, 63 Fed. Reg. 13,916 (Mar. 23, 1998).......................................................5

SEC Rel. No. IC-14244, 49 Fed. Reg. 46,558 (Nov. 27, 1984) ....................................................5

## INTRODUCTION

The plaintiffs in each of the underlying cases are investors in mutual fund or variable an-

nuity products offered or advised by the various defendants. For convenience, we refer to plain-

tiffs-appellees as the Investors and to defendants-appellants as the Funds.[1]

Under federal law, mutual fund shares can be purchased and sold (redeemed) only at a

price based on the fund's "net asset value" (NAV), which is calculated once daily using the

prices of the securities in which the fund has invested. Traded securities—including securities

traded on foreign markets—must be priced at market value; if (and only if) market value is not

"readily available," the fund may make an estimate of "fair value." The Investors in these cases

complain that the Funds improperly calculated the NAVs of mutual funds invested in foreign se-

curities by relying on market value rather than engaging in "fair value" pricing. They charge that

---

[1] In No. 04-1495, plaintiff Carl Kircher allegedly invested in Putnam International Growth and Income Fund, a mutual fund series of defendant Putnam Funds Trust, which is advised by defendant Putnam Investment Management, LLC. In Nos. 04-1496 & 04-1608, plaintiffs Steve Dudley and Beth Dudley allegedly invested in defendant Putnam International Equity Fund, as well as in Putnam International New Opportunities Fund, a mutual fund series of defendant Putnam Investment Funds, which are advised by defendant Putnam Investment Management, LLC. In No. 04-1628, plaintiff T.K. Parthasarathy allegedly invested in Artisan International Fund, a mutual fund series of defendant Artisan Funds, Inc., which is advised by defendant Artisan Partners Limited Partnership. In No. 04-1650, plaintiff Dorothy Luettinger allegedly invested in Scudder International Fund, a mutual fund series of defendant Scudder International Fund, Inc., which is advised by defendant Deutsche Investment Management Americas Inc. In No. 04-1651, plaintiff Robert Potter allegedly invested in Janus Overseas Fund, a mutual fund series of defendant Janus Investment Fund, which is advised by defendant Janus Capital Management LLC. In Nos. 04-1660 & 04-0661, plaintiff Gary Vogeler allegedly invested in Acorn International Fund, a mutual fund series of defendant Columbia Acorn Trust, which is advised by defendant Columbia Wanger Asset Management L.P. In No. 04-2162, plaintiff Avery Jackson allegedly invested in the Van Kampen International Magnum Fund, a mutual fund series of defendant Van Kampen Series Fund, Inc., which is advised by defendant Van Kampen Investment Advisory Corporation. In No. 04-2687, plaintiff Terry Spurgeon allegedly purchased a variable annuity contract from defendant Pacific Life Insurance Company.

this alleged misconduct allowed arbitrageurs (known as "market timers") to profit from time-zone differences between domestic and foreign markets by purchasing mutual fund shares at a discount or redeeming them at a premium. These market-timing trades, the Investors allege, injured other mutual fund investors by diminishing (diluting) the value of their investments.

The Funds removed the Investors' actions to federal court pursuant to the Securities Litigation Uniform Standards Act of 1998 (SLUSA). As pertinent here, SLUSA preempts state-law class actions that allege specified misconduct "in connection with" the purchase or sale of securities. The district court held that SLUSA did not preclude the Investors' state-law challenges to the Funds' alleged facilitation of market-timing trading of mutual fund shares because the "in connection with" requirement ostensibly was not met.

## STATEMENT OF JURISDICTION

By order entered in No. 04-1495 on June 29, 2004, and subsequently adopted in the rest of these appeals, this Court concluded that the underlying actions were properly removed to federal court pursuant to SLUSA, 15 U.S.C. §§ 77p(c) & 78bb(f)(2), and that these appeals are within the Court's appellate jurisdiction as conferred by 28 U.S.C. § 1291. App. 320a-327a.

## QUESTION PRESENTED

SLUSA preempts state-law class actions that allege misconduct undertaken "in connection with" the purchase or sale of securities. The Supreme Court has held that the parallel "in connection with" requirement in § 10(b) of the Securities Exchange Act of 1934 is met if the alleged misconduct "coincides" with the purchase or sale of securities. The Investors in these cases allege that the Funds engaged in misconduct that coincided with the purchase and redemption of fund shares by both market timers and the Investors. Did the district court err in concluding that the "in connection with" requirement of SLUSA was not met?

2

## STATEMENT OF THE CASE

The Investors filed a series of putative class action complaints against the Funds in the circuit courts for Madison and St. Clair Counties, Illinois. The Funds timely removed each of the actions to the Southern District of Illinois pursuant to SLUSA's removal provision, 15 U.S.C. §§ 77p(c) & 78bb(f)(2). The district court ruled that SLUSA did not preempt the Investors' claims, and remanded each of the actions to state court. The Funds filed timely notices of appeal, and this Court consolidated the cases for briefing and decision.

## STATEMENT OF FACTS

On September 3, 2003, the Attorney General of New York released a complaint alleging that a hedge fund had been "market timing" various mutual funds by making in-and-out trades designed to exploit pricing inefficiencies. The first civil complaints involving market timing were filed less than 24 hours later; since then, more than 200 cases against more than 20 fund complexes have been filed. Most of these actions were filed in federal court under the federal securities laws; a few were filed in state court and were subsequently removed by the defendants. With few exceptions other than the consolidated cases before this Court, the market-timing actions have been transferred to the District of Maryland for coordinated proceedings. *In re Mutual Funds Inv. Litig.*, 310 F. Supp. 2d 1359 (J.P.M.L. 2004). That court has deferred consideration of remand issues in the cases before it. App. 347a-353a.[2]

---

[2] The court below actively managed most of these cases to keep them out of the multidistrict proceedings. In one order, for example, the district court stated that it was "keenly aware of Plaintiffs' request for prompt consideration . . . in light of a pending transfer" and remanded the case to avoid its being "swept into a massive MDL proceeding." App. 7a-8a; *see also Woodbury v. Nationwide Life Ins. Co.*, No. 04-C-373 (S.D. Ill. July 30, 2004), at 3 (court below "consistently *denies* motions to stay proceedings . . . based on the entry of a Conditional Transfer Order by the MDL Panel"). The great majority of federal courts, by contrast, rec-

[Footnote continued on next page]

The Investors allege that the Funds "set the fund share price (NAV) once every business day at the close of trading on the New York Stock Exchange at 4:00 p.m. Eastern Time," and that, to do so, the Funds "use the last trade price in the home market of each of the securities in [their] portfolio[s]." App. 244a. These allegations reflect the requirements of the Investment Company Act of 1940 (ICA) and associated regulations, pursuant to which mutual funds typically "calculate their NAVs once each day at or near the close of the major U.S. securities exchanges and markets (usually 4:00 p.m., Eastern Time . . .)" and "generally calculate their NAVs by using the closing prices of portfolio securities on the exchange or market (whether foreign or domestic) on which the securities principally trade." SEC Div. of Inv. Mgmt., *Letter to the ICI Regarding Valuation Issues*, 2001 SEC No-Act. LEXIS 543, at *1, *3 (Apr. 30, 2001).

The Investors further allege that a "significant portion of the securities in [the Funds'] portfolios are foreign securities" that trade on exchanges "located in time zones that are five hours to fifteen hours ahead of Eastern Standard Time." App. 244a. As a result of this time-zone difference, the Investors allege that "the closing prices of the foreign securities in the underlying portfolio may not reflect current market values at the time [the Funds] set their fund NAV." *Id.* The Investors complain that despite "knowledge of . . . the stale price[s] of the foreign securities in [their] underlying portfolio[s]," the Funds "do not make any value adjustments to the portfolio securities prior to calculating fund NAV and setting share price every business day." *Id.* at 245a.

---

[Footnote continued from previous page]

ognize that a stay pending MDL transfer often best accords with the policies of the federal framework for multidistrict case management. *See, e.g., In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990); App. 339a-341a. We recognize that district courts have broad power to stay, or not to stay, proceedings for the sake of judicial efficiency (*e.g., Clinton v. Jones*, 520 U.S. 681, 706 (1997)), but suggest that an across-the-board refusal even to entertain stay requests based on the pendency of an MDL transfer motion is not an appropriate exercise of "discretion."

4

The ICA, however, does not require (or even permit) funds to estimate the "fair value"—*i.e.*, a valuation that differs from the closing price—of portfolio securities unless market quotations are not readily available. 15 U.S.C. § 80a-2(a)(41)(B)(ii); 17 C.F.R. § 270.2a-4(a). When market quotations are readily available, "funds are not permitted to ignore these quotations and fair value price the securities" because to do so "would not be consistent with a fund's obligation under the 1940 Act and could result in an incorrect NAV." 2001 SEC No-Act. LEXIS 543, at *6; *see also* SEC Rel. No. 33-7512, 63 Fed. Reg. 13,916, 13,933 (Mar. 23, 1998); SEC Rel. No. IC-14244, 49 Fed. Reg. 46,558, 46,559 n.7 (Nov. 27, 1984).

Nevertheless, the Investors charge that "[b]y failing to make daily adjustments . . . and by choosing to use stale prices in valuing their fund shares and setting their daily NAVs, [the Funds] have exposed long term shareholders to market timing traders who regularly purchase and redeem [fund] shares as part of a profitable trading strategy." App. 248a. They contend that the "excess profits that are obtained by market timing traders' taking advantage of the stale pricing of [fund] shares come at the expense of fellow shareholders." *Id.* at 250a. The Investors complain that, by allegedly facilitating market-timing trading in this fashion, the Funds breached duties purportedly owed to shareholders under state common law. *Id.* at 257a. On behalf of putative classes of investors who bought and held shares in the respective Funds, the Investors seek damages (including punitive damages), interest, and attorneys' fees. *Id.*

The Funds removed the cases to federal court on the ground, *inter alia*, that the Investors' claims are governed by SLUSA, which precludes state-law class actions that allege specified misconduct—a material misstatement or omission, or the use of a manipulative or deceptive device—"in connection with" the purchase or sale of securities. *See* 15 U.S.C. §§ 77p(b) & 78bb(f)(1). The Investors' sole defense to SLUSA preemption was that the "in connection with"

5

requirement was not met because they ostensibly were mere "holders," rather than purchasers or sellers, of mutual fund shares.

In a series of nearly identical orders, the district court ruled that SLUSA's "in connection with" requirement was not met in these cases because "[t]here is no claim asserted by a purchaser or seller; the claims are brought by those who *held* shares." App. 9a. The court concluded that "[t]hese claims are not actionable under [§ 10(b) of the Securities Exchange Act of 1934], and they are not removable under SLUSA." *Id.* (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)); *see also* App. 333a (because the "complaint alleges dilution claims that only a holder of securities can bring" and "[s]uch claims are not actionable under the [Exchange Act]," the "claims cannot be removed under SLUSA"). The same reasoning was adopted in each decision under review. *See id.* at 4a-5a; 20a-21a; 26a-27a; 33a-34a; 40a-41a; 46a.[3]

## SUMMARY OF ARGUMENT

I. SLUSA was enacted to prevent securities plaintiffs from circumventing the substantive and procedural requirements of federal law, particularly the restrictions on strike suits and abusive discovery, by filing class actions in state court.

---

[3] Because the cases are all variations on the same theme, we generally cite the complaint (App. 240a-262a) and order (*id.* at 23a-29a) in *Potter* (No. 04-1651) as representative. For the same reason, we refer to the district court in the singular even though three different judges entered the orders at issue. Although *Spurgeon* (No. 04-2687) involves variable annuities and the rest of the cases involve mutual funds, for purposes of applying SLUSA there are no relevant differences because the *Spurgeon* investors' premiums were allegedly allocated to subaccounts that were invested in mutual funds that were subject to market timing; a subaccount unit is equivalent to a mutual fund share. We note, however, that Pacific Life Insurance Company has also appealed from the district court's order denying a stay in *Spurgeon*. This issue is not common to all and therefore will not be addressed in this joint brief. Pacific Life requests permission to submit supplemental briefing on this issue if necessary.

A. As pertinent here, SLUSA precludes state-law class actions that allege misconduct "in connection with" the purchase or sale of securities. The "in connection with" requirement of SLUSA is nearly identical to the language of § 10(b) of the Securities Exchange Act of 1934, which prohibits misstatements and manipulation "in connection with" the purchase or sale of any security. The phrase should be given the same meaning in each instance. *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002).

B. In *SEC v. Zandford*, 535 U.S. 813 (2002), the Supreme Court construed the "in connection with" requirement of § 10(b) broadly and concluded that "[i]t is enough that the scheme to defraud and the sale of securities coincide." The Court relied on previous § 10(b) cases, particularly *United States v. O'Hagan*, 521 U.S. 642 (1997), in concluding that the plaintiff need not be a purchaser or seller to fit within the statute so long as there is a nexus between the alleged misconduct and a purchase or sale of securities. The Investors' claims satisfy the "in connection with" requirement in two ways: They claim that the Funds' alleged misconduct coincided with purchases and sales of securities by market timers, and they claim that this misconduct coincided with mutual fund investments by the Investors and putative class members.

II. The Investors' claims meet the "in connection with" requirement of SLUSA because they allege that the Funds' misconduct coincided with the purchase and redemption of mutual fund shares by market timers.

A. The Investors allege that the Funds set inaccurate fund share prices, creating arbitrage opportunities that were inconsistent with stated investment objectives. This purported misconduct coincided with (indeed, according to the Investors, facilitated) the purchase and sale of securities by market timers, allegedly to the Investors' detriment. The Investors claim that their injuries were directly caused by the market timers' purchases and sales, which allegedly dimin-

7

ished the value of the Investors' mutual fund holdings. A misrepresentation concerning the value of securities that coincides with a purchase or sale satisfies SLUSA's "in connection with" requirement. Accordingly, the Investors have pleaded precisely what SLUSA precludes.

B. The district court ruled that SLUSA is inapplicable where there is no claim asserted by a purchaser or seller. But there is no such limitation in SLUSA, although Congress has enacted a purchaser/seller requirement in other statutes. The district court's ruling rested on a misapplication of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), in which the Supreme Court limited the judicially created private right of action under Rule 10b-5 to actual purchasers or sellers of securities. This limitation was based solely on the Court's policy determinations and was not, as the Investors would have it, a judicial construction of the "in connection with" language. The Supreme Court reiterated in *O'Hagan* that the *Blue Chip Stamps* purchaser/seller limitation is *not* an element of a § 10(b) violation. Congress is presumed to have adopted this interpretation in enacting SLUSA the following year. *Holmes v. SIPC*, 503 U.S. 258 (1992).

The *Blue Chip Stamps* rule was adopted to combat unmeritorious suits and discovery abuse, and does not apply in cases that do not present those dangers. Since SLUSA was enacted to counteract precisely the same problems, applying a *Blue Chip Stamps*-type rule in this context is both unnecessary and unwarranted. The courts that have done so (*e.g., Green v. Ameritrade, Inc.*, 279 F.3d 590 (8th Cir. 2002)) misread *Blue Chip Stamps* as a construction of § 10(b)'s "in connection with" limitation, rather than as an extra-statutory limit imposed by the Judiciary on private actions under Rule 10b-5. As the SEC has opined, there is no basis in law or logic to incorporate the *Blue Chip Stamps* rule into SLUSA.

8

C. The district court erroneously concluded that SLUSA does not preclude claims that are not "cognizable" under § 10(b) of the Exchange Act. But Congress did not condition SLUSA preemption on the availability of a private federal right of action. In fact, § 10(b) includes many requirements that are not prerequisites to SLUSA preemption, and SLUSA preempts many claims that cannot be brought under § 10(b). Congress did codify a number of exceptions to SLUSA, but not the purchaser/seller limitation on which the district court relied. This Court should decline to recognize an exemption that Congress did not enact (or, for that matter, intend). Unlike the judicially implied private right of action under Rule 10b-5, the contours of SLUSA have been prescribed by Congress and leave no room for judicial innovation. The plain language of SLUSA, as construed by the Supreme Court in the analogous § 10(b) context, dictates the conclusion that the Investors' claims are preempted.

III. The claims also meet the "in connection with" requirement of SLUSA because the Investors allege that the Funds' misconduct induced them (and the class members they purport to represent) to purchase fund shares. As a result, their actions are precluded by SLUSA even assuming *arguendo* the applicability of a *Blue Chip Stamps*-type purchaser/seller limitation.

A. The complaints allege that the Investors are "purchasers" of mutual fund shares. They assert that the Funds convinced them to "invest" in international mutual funds for the long term, and that these investment goals were "expressly stated" in fund prospectuses. They further allege that these representations were misleading because the Funds exposed the Investors to market timers by failing to implement fair value pricing, and that as "buy and hold shareholders" they suffered dilution of the value of their fund shares. These allegations bring the Investors' claims within the preclusive reach of SLUSA. *Dudek v. Prudential Sec., Inc.*, 295 F.3d 875 (8th Cir. 2002).

9

B. The Investors cannot avoid SLUSA preemption by alleging that they continued to hold their shares during the period of alleged misconduct. Even under the *Blue Chip Stamps* rule, claims by persons who "bought and held" securities are precluded by SLUSA. *Riley v. Merrill Lynch, Pierce, Fenner & Smith*, 292 F.3d 1334 (11th Cir. 2002). Moreover, the proposed class definitions do not exclude purchasers or sellers. Courts applying the *Blue Chip Stamps* rule in the SLUSA context have found preclusion in these circumstances. *Prof'l Mgmt. Assocs. v. KPMG LLP*, 335 F.3d 800 (8th Cir. 2003). It is irrelevant that the Investors seek damages for alleged "dilution," since SLUSA preclusion turns on the substance of their claims rather than the remedy sought; allegations of misconduct beginning before a purchase and continuing thereafter satisfy the "in connection with" requirement. The Investors' claims are precluded by SLUSA.

## STANDARD OF REVIEW

This Court reviews questions of statutory construction *de novo*. *E.g.*, *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 326 (7th Cir. 1995).

## ARGUMENT

The misconduct alleged by the Investors in these cases coincided with the purchase and sale of securities by both market timers and the Investors (and putative class members). Accordingly, the district court should have dismissed their claims under SLUSA following removal.

**I.  SLUSA Precludes State-Law Class Actions That Allege Misconduct "In Connection With" The Purchase Or Sale Of Securities**

Concluding that the "private securities litigation system is too important to the integrity of American capital markets to allow this system to be undermined by those who seek to line their own pockets by bringing abusive and meritless suits," Congress enacted the Private Securities Litigation Reform Act (PSLRA) in 1995 to "implement needed procedural protections to discourage frivolous litigation." H.R. Rep. No. 104-369, at 31-32 (1995); *see, e.g.*, *Behlen v.*

10

*Merrill Lynch*, 311 F.3d 1087, 1091 (11th Cir. 2002), *cert. denied*, 539 U.S. 927 (2003); *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107 (2d Cir. 2001). The PSLRA's two most significant reforms were the creation of new and rigorous pleading requirements for securities fraud actions and an automatic stay of discovery until the court in which such an action is filed has had an opportunity to evaluate the sufficiency of the claims asserted. 15 U.S.C. §§ 77z-1 & 78u-4; *see, e.g., In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 978-79 (9th Cir. 1999).

The PSLRA was directed only to federal litigation because "state-court class actions involving nationally traded securities were virtually unknown" when the PSLRA was enacted. S. Rep. No. 105-182, at 4 (1998). But the plaintiffs' bar soon began circumventing the PSLRA's requirements (and its objectives) by filing "frivolous and speculative" securities actions in *state* court. H.R. Conf. Rep. No. 105-803, at 14-15 (1998); *see Patenaude v. Equitable Life Assur. Soc.*, 290 F.3d 1020, 1025 (9th Cir. 2002). Indeed, "the decline in federal securities class action suits that occurred after the passage of the PSLRA was accompanied by a nearly identical increase in state court filings." *Riley v. Merrill Lynch, Pierce, Fenner & Smith*, 292 F.3d 1334, 1341 n.12 (11th Cir.), *cert. denied*, 537 U.S. 950 (2002).

In enacting SLUSA, Congress explained that "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA], it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities." *Behlen*, 311 F.3d at 1091 (quoting Pub. L. No. 105-353, § 2(5)); *see also* App. 321a (recognizing that Congress enacted SLUSA to deter securities plaintiffs from "avoid[ing] the strictures of federal statutes," including the PSLRA). To accomplish this objective, SLUSA broadly preempts state-law class actions involving securities. *See Patenaude*, 290 F.3d at 1025 ("the statutory context and legislative history buttress the broad

11

reach of SLUSA's plain language"). SLUSA is even broader than the PSLRA, and precludes state-law claims that could not have been brought under federal law. *See, e.g., Blaz v. Belfer,* 368 F.3d 501, 504-05 (5th Cir. 2004).

A.   **"In Connection With" Means The Same Thing In SLUSA And In Section 10(b) Of The Exchange Act**

SLUSA mandates the dismissal of lawsuits that meet four statutory prerequisites: "(1) the suit is a 'covered class action,' (2) the plaintiffs' claims are based on state law, (3) one or more 'covered securities' has been purchased or sold, and (4) the defendant misrepresented or omitted a material fact [or used a manipulative or deceptive device] 'in connection with the purchase or sale of [such] security.'" *Riley,* 292 F.3d at 1342; *see* 15 U.S.C. §§ 77p(b) & 78bb(f)(1). With the exception of the "in connection with" requirement, neither the Investors nor the district court disputed that each condition is met in these cases. Accordingly, the preclusive effect of SLUSA in these cases turns on whether the misconduct alleged by the Investors took place "in connection with" the purchase or redemption of mutual fund shares.[4]

---

[4] Having failed to dispute the other SLUSA prerequisites in the district court, the Investors may not do so in this Court. *E.g., Stevens v. Umsted,* 131 F.3d 697, 705 (7th Cir. 1997). In any event, the other requirements of SLUSA are clearly met here. (1) The class allegations (App. 261a-254a) qualify these cases as "covered class actions" under SLUSA. 15 U.S.C. § 78bb(f)(5)(B)(i). (2) The Investors expressly base their claims on state law. App. 255a, 257a. (3) Mutual fund shares are "covered securities" under SLUSA. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 999-1000 (C.D. Cal. 2002). So are variable annuities. *Herndon v. Equitable Variable Life Ins. Co.,* 325 F.3d 1252, 1254 (11th Cir. 2003). (4) The complaints allege misrepresentation, omission, deception, and/or manipulation, in that the Investors claim that the Funds failed to adhere to the valuation policies established by federal law and set forth in the fund prospectuses, with the result that fund share prices were inaccurate and the Funds' representations regarding investment objectives were misleading. App. 252a-258a; *cf. Feitelberg v. Merrill Lynch & Co.,* 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002) ("if it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up"), *aff'd,* 353 F.3d 765 (9th Cir. 2003).

The "in connection with" language in SLUSA also appears in § 10(b) of the Exchange Act, which makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ." 15 U.S.C. § 78j(b). The SEC's Rule 10b-5 similarly outlaws fraud and deceit, including false statements and omissions concerning material facts, "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

"[T]he normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995); *see Firstar Bank v. Faul*, 253 F.3d 982, 988 (7th Cir. 2001) (Congress is presumed to have "intended for the language in the new law to have the same meaning as the old"). SLUSA's use of "in connection with" should therefore be given a meaning congruent with that afforded the same phrase in § 10(b) of the Exchange Act. *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129-31 (9th Cir. 2002). As the SEC has explained, "[a]dopting for SLUSA purposes a construction of the term that is more restrictive than the definition applied under Section 10(b) would mean that litigants could continue to bring some cases under state law rather than being forced to sue under Section 10(b) and its attendant constraints." Br. of the SEC as *Amicus Curiae* in *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03-7499 (2d Cir. filed June 22, 2004), at 9. Accordingly, judicial interpretations of § 10(b) provide a roadmap for construing the substantially identical terms of SLUSA. *Id.* at 8-9.

**B.     The "In Connection With" Requirement Is Met If The Alleged Misconduct And A Securities Transaction "Coincide"**

In *SEC v. Zandford*, 535 U.S. 813 (2002), the Supreme Court granted certiorari to review the meaning of the "in connection with" language of § 10(b) and Rule 10b-5. *Id.* at 815, 818. The Court began by reiterating its long-expressed view that "the statute should be 'construed

13

"not technically and restrictively, but flexibly to effectuate its remedial purpose."'" *Id.* at 819 (quoting *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 151 (1972) (quoting *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195 (1963))). The Court also noted approvingly that "the SEC has consistently adopted a broad reading of the phrase 'in connection with the purchase or sale of any security.'" 535 U.S. at 819.

The key holding of *Zandford* is that, to satisfy the "in connection with" requirement of § 10(b), "[i]t is enough that the scheme to defraud and the sale of securities *coincide*." 535 U.S. at 822 (emphasis added). In *Zandford*, a stock broker persuaded his customers to open a joint account, and then liquidated their securities and misappropriated the funds for his own use. *Id.* at 815-16. The Supreme Court rejected the argument that the broker's fraudulent scheme was not "in connection with" the purchase or sale of securities: Because his "fraud coincided with the [securities] sales," the Court held that the SEC could maintain a § 10(b) action against him. *Id.* at 820. In so holding, the Court relied on *United States v. O'Hagan*, 521 U.S. 642 (1997), in which a lawyer misappropriated information about a client's planned tender offer and used that information to trade in the target company's stock. The *O'Hagan* Court held that this scheme satisfied the "in connection with" requirement because "[t]he securities transaction and the breach of duty . . . coincide." *Id.* at 656; *see also* SEC *Dabit* Br. 10-11 (§ 10(b) "requires only that there be a nexus or relationship between the fraud and a securities transaction" and "[t]he necessary connection . . . exists when, among other situations, the proscribed conduct and the sale are part of the same fraudulent scheme") (internal quotation omitted). The parallel requirement of SLUSA is similarly met if there is a nexus between the alleged misconduct and a purchase or sale of securities.

14

The few courts that have applied *Zandford* in the SLUSA context hold unequivocally that a misrepresentation concerning the value of securities that coincides with a purchase or sale of those securities satisfies the "in connection with" requirement of SLUSA. *Falkowski*, 309 F.3d at 1131 ("The claim that defendant concealed the impending accounting write-off sufficiently alleges fraud 'in connection with' a contract to sell [defendant's] shares because it involves a misrepresentation about the value of the options"); *Feitelberg*, 234 F. Supp. 2d at 1052 ("[P]laintiff's allegations try to establish that defendants misrepresented the value of stock in order to further the interests of their investment banking division . . . . Accordingly, it is clear that the scheme to defraud and the sale of securities coincide. As such, the alleged misfeasance clearly is 'in connection with' the sale of securities.") (footnotes omitted), *aff'd*, 353 F.3d at 765. As *Falkowski* put it, the allegations of misconduct need only have "'more than some tangential relation to' the securities [transactions] themselves." 309 F.3d at 1131.

The Investors' claims are precluded by SLUSA because they satisfy the "in connection with" requirement in two independently sufficient ways. First, the alleged misconduct coincided with the purchases and redemptions of fund shares by market timers; and second, that alleged misconduct coincided with the Investors' mutual fund investments. We discuss each in turn.

## II.     The Investors Allege Misconduct "In Connection With" The Purchase Or Sale Of Securities By Market Timers

The Investors' claims meet SLUSA's "in connection with" requirement because the purchases and redemptions of fund shares by market timers bear the requisite causal nexus with the alleged misconduct. The misconduct alleged by the Investors is the Funds' establishment of inaccurate fund share prices through their purported failure to adequately implement fair value pricing when calculating fund NAVs, which created arbitrage opportunities that were exploited by market timers. This alleged misconduct coincided with (indeed, according to the Investors,

15

facilitated) the purchase or sale of securities by market timers. These market-timing trades are alleged to have caused dilution of the Investors' fund share value, for which (the theory goes) the Funds are liable as a result of their having "permitted" market timing.

### A.    The Alleged Misconduct Coincided With The Market-Timing Transactions

That the Investors allege misconduct by the Funds "in connection with" the purchase or sale of securities by market timers is clear from the complaints: The Investors allege that "[b]y failing to make daily adjustments" to correct "stale prices," the Funds "exposed long term share-holders to market timing traders" who "buy shares on days when the United States market moves up" and who "sell (redeem) shares when the United States market moves down," all "at the ex-pense of fellow shareholders who are non-trading long term buy and hold investors." App. 249a-250a. Moreover, the Investors expressly allege that their injuries flow directly from the purchase and sale of securities by market timers. They claim that "[t]he transfer of wealth" from long-term shareholders to market timers "occurs through dilution" of the value of fund assets caused by the market timers' purchase of shares at a discount and redemption of shares at a premium. *Id.* at 250a. The market timers' purchases and redemptions are therefore a necessary element of the Investors' claim that the Funds breached duties to them.

Because the requisite nexus between the alleged misstatement of the value of fund shares and the market timers' trading is present on the face of the Investors' complaints, it follows *a fortiori* from *Zandford* and *O'Hagan* that the "in connection with" requirement of SLUSA is sat-isfied in these cases. *Falkowski*, 309 F.3d at 1131; *see also* App. 344a (concealment of market timing trades from other investors, to whom those trades were allegedly disadvantageous, "would amount [to] deception in connection with purchases or sales for the purposes of SLUSA"); *id.* at 349a ("market-timed transactions involved 'the purchase or sale of a covered

16

security' and, according to the facts alleged by plaintiffs, were 'manipulative and deceptive'"). The Investors have pleaded precisely what the statute precludes, and SLUSA mandates dismissal of their complaints.

The district court in these cases made no finding that the market timers' purchases and redemptions did not satisfy SLUSA's "in connection with" requirement. Instead, the court concluded that the claims at issue are not precluded by SLUSA because *the Investors* claimed that they were suing not as purchasers or sellers of securities, but rather as mere "holders" of mutual fund shares. This ruling was wrong as a matter of law (and, as explained in Part III below, as a matter of fact as well).

### B.   Claims In Which The Plaintiff Is Not A Purchaser Or Seller Are Not Exempted From SLUSA

The district court ruled that SLUSA is inapplicable where "[t]here is no claim asserted by a purchaser or seller." App. 26a. The court cited no statutory basis for this assertion, because there is none. This is significant because when Congress wants to adopt a purchaser/seller limitation, it well knows how to do so. *See* Insider Trading and Securities Fraud Enforcement Act of 1988, Pub. L. No. 100-704, 102 Stat. 4677, 4680-81 (codified at 15 U.S.C. § 78t-1) (limiting statutory right of action to contemporaneous purchasers and sellers). By not enacting a similar limitation in SLUSA, Congress precluded state-law actions that allege misconduct that coincides with *someone's* purchase or sale of securities, including the market timers' purchases and redemptions of mutual fund shares in these cases. *O'Hagan*, 521 U.S. at 658 (parallel language of § 10(b) "requires deception 'in connection with the purchase or sale of any security,' *not* deception of an identifiable purchaser or seller") (emphasis added); *see also Carpenter v. United States*, 484 U.S. 19, 24 (1987); *SEC v. Jakubowski*, 150 F.3d 675, 680 (7th Cir. 1998).

17

The district court unblinkingly accepted a flawed syllogism proffered by the Investors to avoid the preemptive reach of SLUSA. The Investors argued that (1) SLUSA's "in connection with" requirement is congruent with the "in connection with" requirement of § 10(b) and Rule 10b-5; (2) the Supreme Court held in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), that a private plaintiff cannot maintain a Rule 10b-5 action unless the plaintiff is a purchaser or seller of securities; (3) therefore, SLUSA only preempts claims by purchasers or sellers of securities. Premises (1) and (2) are, of course, correct; but conclusion (3) does not follow from them. Rather, as the SEC has explained, "SLUSA applies to preempt state law actions even if the actions do not meet the purchaser/seller standing requirement of [*Blue Chip Stamps*]." SEC *Dabit* Br. 16 (initial capitalization omitted).

In *Blue Chip Stamps*, the Supreme Court eschewed reliance on the text of the regulation (or the statute it implements), resting its decision instead on "what may be described as policy considerations." 421 U.S. at 737. Chief among these was the "recognition that litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." *Id.* at 739. The Court pointed to two dangers in particular: First, even meritless cases have significant settlement value "so long as [the plaintiff] may prevent the suit from being resolved against him by dismissal or summary judgment"; and second, the "potential for possible abuse of the liberal discovery provisions" afforded under the Federal Rules. *Id.* at 740-41. The Court reasoned that since neither § 10(b) nor Rule 10b-5 "speaks at all to the contours of a private cause of action for their violation," it was "free to weigh" policy considerations and, on that basis, adopt a rule limiting the class of private Rule 10b-5 plaintiffs to those who had purchased or sold securities. *Id.* at 749, 754-55.

18

The *Blue Chip Stamps* rule is *not*, as the Investors would have it, a judicial construction of the "in connection with" requirement of § 10(b). The Court expressly recognized that its judicially created limitation would prevent private plaintiffs from bringing actions that met the *statutory* definition of a § 10(b) violation, including the "in connection with" requirement. 421 U.S. at 738.[5] As Justice O'Connor has explained, "[t]he purchaser/seller standing limitation in Rule 10b-5 damages actions . . . does not stem from a construction of the phrase 'in connection with the purchase or sale of any security.'" *Holmes v. SIPC*, 503 U.S. 258, 284 (1992) (opinion concurring in part and concurring in the judgment); *see also Ontario Pub. Serv. Empl. Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004) (the purchaser/seller limitation and the "in connection with" requirement "are two distinct inquiries").

The Supreme Court in *O'Hagan* unequivocally held that the purchaser/seller limitation adopted for policy reasons in *Blue Chip Stamps* is *not* an element of § 10(b):

> In [*Blue Chip Stamps*], we held that only actual purchasers or sellers of securities may maintain a private civil action under § 10(b) and Rule 10b-5. We so confined the § 10(b) private right of action because of "policy considerations." In particular, *Blue Chip Stamps* recognized the abuse potential and proof problems inherent in suits by investors who neither bought nor sold, but asserted they would have traded absent fraudulent conduct by others. *Criminal prosecutions do not present the dangers the Court addressed in* Blue Chip Stamps, *so that decision is "inapplicable" to indictments for violations of § 10(b) and Rule 10b-5.*

521 U.S. at 664-65 (emphasis added; internal citations omitted). And in *Zandford*, in which the sole issue was the meaning of the phrase "in connection with" in § 10(b), the *Blue Chip Stamps*

---

[5] In *Eason v. General Motors Acceptance Corp.*, 490 F.2d 654, 659-60 (7th Cir. 1973), this Court (Stevens, J.) had held that "holders" could assert 10b-5 claims because the "in connection with" requirement of the statute was met. This holding was rejected by the *Blue Chip Stamps* Court for reasons of policy, not statutory construction. *See* 421 U.S. at 748-49. As Justice Stevens has since observed, "the limitation on the right to recover pecuniary damages in a private action identified in *Blue Chip* is not necessarily coextensive with the limits of the rule itself." *Chiarella v. United States*, 445 U.S. 222, 238 n.\* (1980) (concurring opinion).

19

rule was not even mentioned, much less applied. It therefore is not an element of § 10(b)'s "in connection with" requirement. *United States v. Naftalin*, 441 U.S. 768, 774 n.6 (1979).

O'Hagan was decided a year before SLUSA was enacted. It should therefore be presumed that Congress adopted the "in connection with" formulation in light of the interpretation that *O'Hagan* had afforded the *Blue Chip Stamps* rule (an interpretation that is clear from *Blue Chip Stamps* itself). *Holmes*, 503 U.S. at 267 (where Congress "used the same words, . . . we can only assume it intended them to have the same meaning that courts had already given them"); *Michigan v. Dept. of Treasury*, 489 U.S. 803, 813 (1989) ("When Congress codifies a judicially defined concept, it is presumed, absent an express statement to the contrary, that Congress intended to adopt the interpretation placed on that concept by the courts"). Thus, Congress must have understood and intended that the Judiciary would apply SLUSA to all claims that would meet the "in connection with" requirement of § 10(b), whether or not such claims could be brought by a private plaintiff under Rule 10b-5. Concomitantly, Congress must also have understood and intended that the Judiciary would not enforce the *Blue Chip Stamps* limitation in cases that "do not present the dangers" that led the Court to adopt the prudential standing rule. *O'Hagan*, 521 U.S. at 665.

SLUSA preclusion obviously does not present the dangers that private 10b-5 actions do; to the contrary, SLUSA was enacted to address precisely the same evils that animated the *Blue Chip Stamps* policy determination. Accordingly, SLUSA should not be circumvented on the basis of a judicially created rule that was designed to ameliorate, not exacerbate, precisely the same concerns that underlie SLUSA preemption. *See* SEC *Dabit* Br. 20 ("As applied under Rule 10b-5, the purchaser/seller rule serves to eliminate lawsuits that involve difficult issues of proof and are vexatious. Were the same rule to apply under SLUSA it would have the opposite effect, in

20

that it would allow lawsuits with precisely these vexatious characteristics to go forward."). If the district court's orders were to be sustained, securities plaintiffs would easily be able to cast state-law class actions as "holder" claims, thereby circumventing both the PSLRA and SLUSA and frustrating the clear purpose of these amendments to the securities laws. *Cf. A.C. Frost & Co. v. Coeur d'Alene Mines Corp.*, 312 U.S. 38, 41-43 (1941) (refusing to apply a judicially created rule that would hinder the purpose of the securities laws).[6]

To be sure, the court below is not alone in having succumbed to the false allure of *Blue Chip Stamps* in the SLUSA context. The Eighth Circuit, for example, has said that *Blue Chip Stamps* "clearly explained the meaning of [the 'in connection with'] language in the context of SEC Rule 10b-5 and § 10(b)," and on this basis concluded that "in enacting SLUSA, Congress

---

[6] Through the PSLRA and SLUSA, along with the National Securities Markets Improvement Act of 1996, "Congress intended to provide national, uniform standards for the securities markets and nationally marketed securities . . . [and] erected uniform standards for registration of, and litigation concerning, a defined class of covered securities." *Lander*, 251 F.3d at 111-12. As this Court has previously noted (App. 320a), mutual funds are regulated by the SEC under various federal statutes, including the Securities Act of 1933, the Exchange Act, and the ICA. The valuation of portfolio securities and the pricing of mutual fund shares are specifically addressed in the ICA and SEC implementing regulations. The federal regulatory regime leaves no room for inconsistent, *ad hoc* determinations by state courts regarding these issues. In fact, the Investors' supposedly state-law claims are expressly based on the Funds' alleged failure to "know and implement applicable rules and regulations governing the calculation of NAV"—*i.e.*, the pricing regulations promulgated by the SEC pursuant to the ICA. App. 257a. For this reason, the Investors' claims "necessarily depend[] on resolution of a substantial question of federal law," and were removable under 28 U.S.C. § 1441(b) in addition to SLUSA. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8-9 (1983); *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 103 (2d Cir.), *cert. denied*, 534 U.S. 1066 (2001). Although the district court ruled that the Investors' claims were not removable under § 1441(b) because they "have not asserted claims under the ICA" (App. 27a), this Court has made clear that "courts rather than parties decide which rules of law govern the dispute." *Int'l Armor & Limousine Co. v. Maloney Coachbuilders, Inc.*, 272 F.3d 912, 915 (7th Cir. 2001), *cert. denied*, 535 U.S. 1078 (2002). The Court would appear to have appellate jurisdiction to consider this alternative ground for removal. *See Chicago, R.I. & P. R. Co. v. Stude*, 346 U.S. 574, 578 (1954).

21

did not make class actions on behalf of 'nonsellers' and 'nonpurchasers' removable to federal court." *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596-97 (8th Cir. 2002); *see also Behlen*, 311 F.3d at 1093 (stating that the *Blue Chip Stamps* Court had "interpreted the identical phrase as it appears in Rule 10b-5"); *Riley*, 292 F.3d at 1343 (same).

As the SEC has explained, decisions such as these "misapprehend the relationship between the purchaser/seller requirement and the 'in connection with' element in Section 10(b)." SEC *Dabit* Br. 18. That is because the *Blue Chip Stamps* Court did not even purport to "explain[]" or "interpret[]" the phrase "in connection with"; rather, it adopted a limitation on persons who can state a private action under Rule 10b-5 that was expressly *divorced from* the language of the statute or rule. 421 U.S. at 749 ("No language in either of those provisions speaks at all to the contours of a private cause of action for their violation"); *see Norris v. Wirtz*, 719 F.2d 256, 259 (7th Cir. 1983). The *Blue Chip Stamps* rule is based on policy, not statutory language, "[y]et the policy concerns that led to the adoption of the rule under Section 10(b) do not appear to apply under SLUSA." SEC *Dabit* Br. 20. To the contrary, application of the purchaser/seller limitation in the SLUSA context would impede Congress's attempt to "enforc[e] a uniform national standard," would "exempt[] . . . a particularly vexatious form of litigation," and would "pose[] other potentially serious problems." *Id.* at 21-22.[7]

---

[7] The MDL court recognized the "conventional wisdom" that the *Blue Chip Stamps* rule applies to SLUSA, but observed that *Zandford* (which has been all but ignored in SLUSA cases) "suggests that *Blue Chip Stamps* should not be mechanically applied." App. 350a. Moreover, the court acknowledged that *Blue Chip Stamps* "was based primarily upon prudential considerations" and that "[t]hose same considerations appear to weigh strongly in favor of SLUSA removability." *Id.*; *but see Grabow v. PricewaterhouseCoopers LLP*, 313 F. Supp. 2d 1152, 1154-55 (N.D. Okla. 2004).

C.   **Claims That Are Not Actionable Under Federal Law Are Not Exempted From SLUSA**

The district court, however, was of the view that SLUSA does not preempt claims that are not "cognizable" under § 10(b) of the Exchange Act.  App. 26a-27a.  It may well be that the Investors could not plead a viable claim under the federal securities laws; but Congress did not condition SLUSA preemption on the availability of a private federal cause of action.  *See* SEC *Dabit* Br. 16 ("That [allegations] satisfy the 'in connection with' requirement [of SLUSA] does not . . . mean that private plaintiffs making these claims can sue under Section 10(b) and Rule 10b-5"); App. 351a n.4 ("an action could be removable under SLUSA on the basis of the purchases and sales made by a [market timer] without the creation of a federal cause of action in favor of mutual fund shareholders under Rule [10b-5]").

SLUSA preempts many claims that could not be maintained under § 10(b) or Rule 10b-5.  For example, *scienter* is a necessary element of a § 10(b) violation, and must be specifically pleaded in a complaint by a private plaintiff under Rule 10b-5, but need not be pleaded in order for an action to come within SLUSA's preemptive scope.  *Feitelberg*, 234 F. Supp. 2d at 1051 ("if by merely omitting scienter allegations plaintiff can avoid SLUSA's preemption effect, SLUSA would be totally eviscerated"); SEC *Dabit* Br. 25 ("the statute's language makes clear that SLUSA preemption does not require an allegation of scienter").  Similarly, "[n]othing in the language of SLUSA suggests that any of the other requirements of a private Rule 10b-5 action—such as statute of limitations, reliance, loss causation—must be met before SLUSA preemption will apply."  *Id.* at 29 n.7.  Indeed, it was recognized at the time SLUSA was enacted that it would preclude state claims that could not be brought under the federal securities laws—for example, claims for aiding and abetting securities violations.  S. Rep. No. 105-182, at 19 (addi-

23

tional views of Sens. Sarbanes, Bryan, and Johnson); *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994).

Congress did codify a number of express exceptions to SLUSA preemption. *See* 15 U.S.C. § 78bb(f)(3), (f)(4), (f)(5)(C). For example, SLUSA preserves state actions asserting exclusively derivative claims, as well as direct claims by individual investors; thus, SLUSA does not completely close the doors of state court to securities plaintiffs. But the relatively narrow exceptions in the statutory text "demonstrate[] that Congress was aware of the impact of the broad preemptive provisions in SLUSA. And because Congress delineated certain exceptions to the general preemptive force of SLUSA, we are reluctant to impose additional exceptions, particularly when such exceptions are unsupported by the text, history, or purpose of the statute." *Lander*, 251 F.3d at 114. None of the express exceptions provided by Congress can save the Investors' claims from SLUSA preemption.

This Court should reject the Investors' entreaty to recognize as a non-statutory exception to SLUSA the policy-based purchaser/seller limitation of *Blue Chip Stamps*. Unlike the judicially implied private right of action under Rule 10b-5, the contours of SLUSA preemption have been prescribed by Congress. The Judiciary has no warrant to rely on policy considerations to change or disregard plain statutory language. *CSX Transp. v. Easterwood*, 507 U.S. 658, 664 (1993) ("If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause"); *Sutter v. Groen*, 687 F.2d 197, 201 (7th Cir. 1982) ("If Congress lays down a flat rule for the courts to follow they have no right to cut it down to fit their conception of legislative purpose"). "[N]either the structure of SLUSA nor its legislative history supports the argument that SLUSA's legislative purpose was not 'expressed by the ordinary meaning of the words used' in the statute." *Patenaude*, 290 F.3d

24

at 1025 (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)).  And the ordinary meaning of the words used by Congress in SLUSA, as construed by the Supreme Court in the analogous § 10(b) context, dictate that the Investors' claims are preempted because they allege misconduct "in connection with" the purchase or sale of securities by market timers.

### III.   The Investors Allege Misconduct "In Connection With" The Purchase Or Sale Of Securities By The Investors And Putative Class Members

The Investors' claims are also precluded by SLUSA because the Investors affirmatively allege that they (and the members of the classes they purport to represent) were induced to purchase securities by the Funds' alleged misrepresentations and omissions regarding share valuation.  As a result, they meet the "in connection with" requirement even assuming, *arguendo*, that a *Blue Chip Stamps*-like limitation requires a purchase or sale by a plaintiff as a prerequisite to SLUSA preemption.

### A.   The Alleged Misconduct Coincided With The Investors' Investments

The Investors' complaints allege that they are "purchasers" of mutual fund shares.  They expressly assert that the Funds "promoted, marketed, and *sold shares to the investing public* nationwide." App. 241a (emphasis added); *see id.* at 243a ("Shares of open end mutual funds are sold to investors such as Plaintiffs . . .").  They allege that the Funds "urg[ed]" and "convince[d] investors such as Plaintiffs" to "invest for the long term" in international mutual funds by "effectively marketing the various advantages of long term ownership" and representing that their goal was to "provid[e] long term capital growth to investors who hold shares of the fund[s]." *Id.* at 243a, 254a.  The Investors assert that these investment goals are "expressly state[d] in [fund] prospectus[es]." *Id.* at 254a.

According to the Investors, however, the Funds' representations were misleading because the Funds "exposed long term shareholders to market timing traders" (App. 248a) by failing to

25

adequately implement fair value pricing to deter market-timing activity. They claim that "[d]ue to the stale pricing utilized by [the Funds], long term *buy and hold shareholders* have incurred a dilution in the NAV of their shares and the wealth represented by that diluted amount has been transferred to market timing traders." *Id.* at 250a (emphasis added). The Investors thus allege that they were induced to purchase securities that the prospectuses represented would be properly priced but that, as a result of the Funds' pricing policies and resultant market timing, were not as valuable as the Investors understood them to be. These allegations establish that the Investors' own purchases of securities not only coincided with, but were affected by, the alleged misconduct, and plainly satisfy SLUSA's "in connection with" requirement.

A directly analogous claim was held preempted by SLUSA in *Dudek v. Prudential Securities, Inc.*, 295 F.3d 875 (8th Cir. 2002), where the plaintiffs alleged that the defendant had misrepresented the appropriateness of investing in certain securities. *See id.* at 880 ("the essence" of the complaint was "the unlawful marketing of tax-deferred annuities, either by misrepresenting their suitability for tax-deferred retirement plans, or by failing to disclose their unsuitability for such accounts"). The "in connection with" requirement was met, the Eighth Circuit concluded, because "defendants' misconduct caused plaintiffs to invest in inappropriate securities." *Id.* at 878. That is just what the Investors allege in these cases. *See also Behlen*, 311 F.3d at 1094-96 (claim preempted by SLUSA where the plaintiff "implicitly alleged that the defendants failed to disclose material facts" about the value of securities they sold to him); *Kenneth Rothschild Trust*, 199 F. Supp. 2d at 999 ("in connection with" requirement of SLUSA was met where the defendant allegedly misrepresented the benefits of purchasing certain securities).

26

**B.**     **Claims By "Buy And Hold" Investors Are Not Exempted From SLUSA**

It is of no moment that the Investors continued to "hold" their fund shares after purchasing them. *See Riley*, 292 F.3d at 1345 ("when a claim that sweeps within its ambit actual purchases or sales of stock is covered by SLUSA, a plaintiff may not avoid SLUSA's restrictions simply by alleging that a given misrepresentation caused him both to purchase and hold a particular security"). That is because where, as here, a securities action is brought on behalf of persons who "purchase[d] and "retain[ed] shares" during the class period, their claims are "not limited solely to the retention of covered securities." *Id.* In these cases, the Investors allege that the Funds misrepresented their NAV pricing policies before the class period began, that the Investors were induced to invest in mutual fund shares, and that their investments have been diluted by market timing facilitated by the Funds' alleged misrepresentations. Even courts applying the *Blue Chip Stamps* rule agree that claims on behalf of a class including persons who "bought and held" securities fall "squarely within SLUSA's parameters." *Prof'l Mgmt. Assocs. v. KPMG LLP*, 335 F.3d 800, 802-03 (8th Cir. 2003), *cert. denied*, 124 S. Ct. 1176 (2004). As noted above, the Investors claim to represent just such a class.

The proposed class definitions provide a further basis for finding SLUSA preclusion. The Investors here purport to represent all persons who purchased shares in various mutual funds, and retained their investment for at least 14 days, during any of the five years preceding the filing of the complaints. App. 251a-252a. It is indisputable that this class includes purchasers and sellers. Not only does the class definition fail to exclude purchasers, it also expressly picks up any investor who purchased during the class period and then held for a mere two weeks

before redeeming or exchanging.[8] Courts, including those that exclude "holder" claims from SLUSA's preemptive reach, have held that SLUSA preempts actions, such as these, in which the class definition is broad enough to include actual purchasers and sellers. *See, e.g., Prof'l Mgmt. Assocs.*, 335 F.3d at 803; *Riley*, 292 F.3d at 1345; *Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 189 F. Supp. 2d 14, 18 (S.D.N.Y. 2001).

The MDL court, confronted with the same "holder" argument as the Investors assert in these cases, recognized that similar state-law allegations regarding market timing "are broad enough to include within the proposed class persons who purchased and/or sold mutual fund shares during the class periods" and "are not limited to persons who purchased their shares prior to the class period and who continued to hold their shares throughout the class period." App. 348a. "Taken together," the court explained, "these allegations appear sufficient to make the actions removable under SLUSA." *Id.* (citing *Riley*, 292 F.3d at 1345, and *Cape Ann Investors LLC v. Lepone*, 296 F. Supp. 2d 4, 12 (D. Mass. 2003)); *see also* App. 344a ("Janus argues persuasively that the Complaint alleges deception in connection with purchases by class members during the period in which improper market timing was going on"). The district court in these cases, by contrast, failed to scrutinize the Investors' allegations and simply accepted their *argument* that the putative classes exclude purchasers and sellers—an argument that cannot be reconciled with the Investors' own pleadings.

---

[8] Even class members who invested before the class period are likely to have made additional purchases during the class period. Almost 90% of mutual fund investors automatically reinvest dividends. O'Neal, *Purchase and Redemption Patterns of US Equity Mutual Funds*, Financial Management 63 (Apr. 1, 2004). Such reinvestments are generally considered "purchases" under the securities laws. *Deutschman v. Beneficial Corp.*, 761 F. Supp. 1080, 1087 (D. Del. 1991).

Rather than looking to plaintiffs' substantive allegations or class definitions, the district court focused on the *remedy*—"dilution" damages—sought by the Investors. App. 27a. The "in connection with" requirement of SLUSA, however, "is not limited to cases involving damages claimed as a result of the purchase or sale of securities." *Prof'l Mgmt. Assocs.*, 335 F.3d at 803. Indeed, most securities plaintiffs allege, as the Investors do, that they suffered damage only after they acquired their shares, whether through dilution, devaluation, or diminution. *See Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 605-06 (D. Del. 2002) ("Courts [applying 10b-5 precedent] have found that an allegation of a 'unitary scheme of fraud' which began before the 'purchase or sale' of securities and continued afterward may . . . satisfy the 'in connection with' requirement. Courts interpreting SLUSA have agreed.") (citations omitted). The fact that the Investors thereafter continued to hold the shares that they purchased, allegedly to their detriment, does not defeat SLUSA preemption. Accordingly, their state-law claims "may not be maintained in any State or Federal court." 15 U.S.C. §§ 77p(b) & 78bb(f)(1).

## CONCLUSION

For the foregoing reasons, the orders under review should be vacated, and the cases should be remanded with instructions to dismiss the complaints pursuant to SLUSA.

Respectfully submitted.

Mark A. Perry
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Attorneys for Janus Capital Management LLC,
Appellant in No. 04-1651*

*[Additional counsel on next page]*

August 27, 2004.

29

John D. Donovan, Jr.
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110
(617) 951-7000

Thomas B. Smith
ROPES & GRAY LLP
700 12th Street, N.W.
Washington, D.C. 20005
(202) 508-4600

*Attorneys for Putnam Funds Trust, Appellant in No. 04-1495, Putnam International Equity Fund, Appellant in No. 04-1496, Putnam Investment Funds, Appellant in No. 04-1608, Artisan Funds, Inc., Appellant in No. 04-1628, and Scudder International Fund, Inc., Appellant in No. 04-1650*

Dale R. Harris
DAVIS GRAHAM & STUBBS LLP
1550 17th Street
Denver, Colorado 80202
(303) 892-9400

*Attorneys for Janus Investment Fund, Appellant in No. 04-1651*

Seth M. Schwartz
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-2710

*Attorneys for Putnam Investment Management, LLC, Appellant in Nos. 04-1495, 04-1496 & 04-1608*

Steven B. Feirson
Stephen J. McConnell
Nory Miller
DECHERT LLP
4000 Bell Atlantic Tower
Philadelphia, Pennsylvania 19103
(215) 994-2369

*Attorneys for Pacific Life Insurance Company, Appellant in No. 04-2687*

Phil C. Neal
Mark A. Rabinowitz
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, Illinois 60602
(312) 269-8083

*Attorneys for Columbia Wanger Asset Management L.P., Appellant in No. 04-1660*

Charles F. Smith
Lee P. Garner
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0787

*Attorneys for Van Kampen Series Fund, Inc., Appellant in No. 04-2162*

Christopher P. Hall
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6702

*Attorneys for Deutsche Investment Management Americas Inc., Appellant in No. 04-1650*

John W. Rotunno
Kenneth E. Rechtoris
BELL, BOYD & LLOYD LLC
70 West Madison Street
Chicago, Illinois 60602
(312) 807-4213

*Attorneys for Artisan Partners Limited Partnership, Appellant in No. 04-1628, and Columbia Acorn Trust, Appellant in No. 04-1661*

Robert Y. Sperling
David E. Koropp
WINSTON & STRAWN
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

*Attorneys for Van Kampen Investment Advisory Corporation, Appellant in No. 04-2162*

## CERTIFICATE OF COMPLIANCE
## WITH APPELLATE RULES 30-32

Pursuant to this Court's Rule 30(d), undersigned counsel certifies that all materials required to be included in appellants' appendix have been so included.

Pursuant to this Court's Rule 31(e)(1), undersigned counsel certifies that the appendix materials are not available in an electronic version as defined in this Court's Rule 31(e)(3).

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), undersigned counsel certifies that this brief is printed in 12-point Times New Roman type, and contains 9,752 words (including footnotes), as counted by the word-processing software on which it was prepared.

Mark A. Perry
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

*Attorneys for Janus Capital Management LLC,*
*Appellant in No. 04-1651*

**BURROUGHS, HEPLER, BROOM, MacDONALD,**
**HEBRANK & TRUE, LLP**
*ATTORNEYS AT LAW*

**GARY A. MEADOWS**
*LICENSED IN ILLINOIS*
*DIRECT DIAL: 618-307-1153*
*FAX: 618-656-1364*
*E-MAIL: gam@ilmolaw.com*
*www.ilmolaw.com*

103 W. VANDALIA STREET, SUITE 300
P.O. BOX 510
EDWARDSVILLE, ILLINOIS 62025
**618-656-0184**

1010 MARKET STREET, SUITE 500
ST. LOUIS, MISSOURI 63101
314-355-6160

*REPLY TO EDWARDSVILLE OFFICE*

November 29, 2004

Stephen M. Tillery
Korein Tillery
10 Executive Woods Court
Swansea, Illinois 62226

> *Re: Parthasarathy v. Artisan Partners Limited Partnership, et al.*
> Our File No.: 3505.38073

Dear Mr. Tillery:

As you may recall, I sent to you an e-mail several weeks ago suggesting that we agree to stand down in the Parthasarathy and the Vogeler mutual funds cases, as we previously did in the Potter case. Unfortunately, however, I have not been able to discuss that with you since then to determine whether we can in fact reach such an agreement.

There has been little, if any, formal activity in the above cases over the last few weeks. Thus, we have not been overly concerned about securing a final agreement to stand down. As you may know, however, the Parthasarathy case has been set for a case management conference on December 3. It is therefore necessary for us to determine now whether we can agree on a stand down.

If you are amenable to such an agreement, please let us know immediately so that we may discuss the terms of the stand down. Otherwise, we will plan on filing a motion to stay the proceeding by no later than December 1.

Thank you. We look forward to hearing from you.

Yours truly,

Gary A. Meadows

GAM/par

EXHIBIT
G

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that he caused the foregoing Motion of Defendants Artisan Funds, Inc. and Artisan Partners Limited Partnership to Stay Proceedings Pending Appeal from Remand Order to be served upon:

Stephen M. Tillery
Korein Tillery
10 Executive Woods Court
Swansea, Illinois 62226

George A. Zelcs
Three First National Plaza
70 West Madison Street
Suite 660
Chicago, Illinois 60602

Klint Bruno
Law Offices of Klint Bruno
1131 Lake Street
Oak Park, Illinois 60301
*Counsel for Plaintiffs*

Daniel A. Pollack
Martin I. Kaminsky
Edward T. McDermott
Anthony Zaccaria
Pollack & Kaminsky
114 West 47th Street
New York, New York 10036

Frank N. Gundloch
Glenn E. Davis
Armstrong Teasdale LLP
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102
*Counsel for Defendants*
*T. Rowe Price International Funds Inc.,*
*T. Rowe Price International, Inc.,*
*AIM International Funds, Inc., and*
*AIM Advisors, Inc.*

by facsimile transmission and, in addition, by placing copies of said Motion in properly addressed envelopes, with first class postage affixed, and depositing said envelopes in the United States Mail at Edwardsville, Illinois, this 30th day of November, 2004.

_____
Attorney