IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| T.K. PARTHASARATHY, EDMUND WOODBURY, STUART ALLEN SMITH, and SHARON SMITH, individually and on behalf of all others similarly situated, <br><br>　　　　　　　　Plaintiffs, <br><br>vs. <br><br>T. ROWE PRICE INTERNATIONAL FUNDS, INC., a corporation, T. ROWE PRICE INTERNATIONAL, INC., ARTISAN FUNDS, INC., a corporation, ARTISAN PARTNERS LIMITED PARTNERSHIP, AIM INTERNATIONAL FUNDS, INC., a corporation, and AIM ADVISORS, INC., <br><br>　　　　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) No. 06-CV-00943-DRH-PMF ) ) ) ) ) ) ) ) ) ) |

**PLAINTIFF EDMUND WOODBURY'S, STUART ALLEN SMITH'S AND
SHARON SMITH'S RESPONSE IN OPPOSITION TO
THE T. ROWE PRICE AND AIM DEFENDANTS' MOTION TO DISMISS**

Plaintiffs hereby incorporate by reference and adopt all of the arguments made in the 1/24/07 Opposition to the Artisan Defendants' Motion to Dismiss. Plaintiffs submit this memorandum in opposition to the T. Rowe Price and AIM defendants' (referred to hereafter as simply "T. Rowe Price" and "AIM") motion to dismiss which raises additional issues not previously addressed.

**I.  THE COURT SHOULD DENY T. ROWE PRICE'S AND AIM'S MOTION TO DISMISS BECAUSE THEY ARE BOUND BY THIS COURT'S 2004 REMAND ORDER, AND THEY CANNOT INVOKE A CHANGE IN THE LAW WROUGHT BY *KIRCHER II* OR *DABIT* AS GROUNDS FOR RE-REMOVING THE CASE.**

In *In re Mutual Fund Market Timing Litig.* ("*Kircher IV*"), 468 F.3d 439 (7th Cir. 2006), the Seventh Circuit explained that this Court's 2005 dismissal with respect to T. Rowe Price and AIM was improper, and the court vacated that dismissal. As the Seventh Circuit explained:

> *Parthasarathy* was removed in 2003 *and remanded as outside federal jurisdiction* in 2004. The Artisan defendants appealed; the Price and AIM defendants did not. That left in force the district court's decision against the non-appealing defendants. When they

> removed again in 2005, the district court should have remanded without regard to the conclusion of *Kircher II*—for **the Price and AIM defendants are bound by the district court's adverse decision**, notwithstanding the fact that both this court (in *Kircher II*) and the Supreme Court (in *Dabit*) have held that the district judge's 2004 decision was mistaken. Litigants who do not appeal from an adverse decision are stuck with it, even if some other party to the same case appeals and wins.
>
> … **The preclusive effect of a judgment, such as the 2003 remand, is an affirmative defense**. Plaintiffs in *Bradfisch* failed to mount that defense; **plaintiffs in Parthasarathy** have done so and **are entitled to its benefits**. Although preclusion does not block a successive removal if facts or law change after the initial remand, see *Midlock v. Apple Vacations West, Inc.,* 406 F.3d 453 (7th Cir.2005), **the "change" worked by Kircher II is not one that the Price and AIM defendants may invoke** (and that change has evaporated anyway).

*Id*. at 443-444 (emphasis added).

Undaunted by that unmistakably clear holding, T. Rowe Price and AIM removed yet again in November 2006. This time they removed and now move to dismiss on the grounds that the Supreme Court's decision in *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S.Ct. 1503 (2006), provides the kind of change in the law that permits them not only to remove for the third time, but also entitles them to dismissal. "In Dabit," the defendants contend, "the Supreme Court gave an unqualified endorsement to the reasoning and rationale of Kircher v. Putnam Funds Trust ("Kircher II") decided by the Seventh Circuit." T. Rowe Price/AIM 12/29/06 Memo at 2.

What T. Rowe Price and AIM fail to explain, however, is if "the 'change' worked by *Kircher II* is not one that the Price and AIM defendants may invoke" (as the Seventh Circuit held in *Kircher IV*), then how could *Dabit* which "gave an unqualified endorsement to the reasoning and rationale" of *Kircher II* constitute a "change" that the T. Rowe Price and AIM defendants may invoke? According to the defendants, the only difference between *Kircher II* and *Dabit* is that the Seventh Circuit decided the former and the Supreme Court decided the latter. That is not

a difference that matters. Because "the 'change' worked by *Kircher II* is not one that the Price and AIM defendants may invoke," neither is the "change" worked by *Dabit*.

Plaintiffs are just as "entitled to the benefits" of the preclusive effect of this Court's 2004 remand order on this third removal as they were the second time T. Rowe Price and AIM attempted to remove this case in 2005. Accordingly, the Court should not reach the merits of and should therefore not grant T. Rowe Price's or AIM's motion to dismiss.

## II. PLAINTIFFS HAVE ALLEGED THAT T. ROWE PRICE AND AIM NEGLIGENTLY AND RECKLESSLY FAILED TO PREVENT SHORT-TERM TRADING KNOWN AS "MARKET TIMING" IN THE FUNDS, AND THEY HAVE NOT ALLEGED THAT DEFENDANTS ENGAGED IN ANY FRAUD OR MANIPULATION.

T. Rowe Price and AIM contend that "[t]he First Amended Complaint alleges that Defendants made misrepresentations or omissions of material faces and used manipulative or deceitful devices coinciding with purchases and sales of shares of the T. Rowe Price and AIM funds." T. Rowe Price/AIM 12/29/06 Memo at 4. As an example, they say that Plaintiffs:

> allege[] that while Defendants have expressly stated in the Funds' prospectuses that their "goal" is "providing long-term capital growth to investors who hold shares of the fund", they, in fact, allegedly knowingly implemented a method of valuing their portfolios which disadvantaged long-term investors and favored short-term traders known as "market timers." See First Am . Cmpl. ¶¶ 37-44, 67, 72, 80, 85.

T. Rowe Price/AIM 12/29/06 Memo at 4. The only part of that purported description of Plaintiffs' allegations, however, are the parts in quotation marks: "goal," "providing long-term capital growth to investors who hold shares of the fund," and "market timers."

The reason T. Rowe Price and AIM cite a lot to but quote very little from the First Amended Complaint is because Plaintiffs have ***not*** alleged misrepresentations, omissions of material facts or alleged that T. Rowe Price or AIM employed manipulative or deceitful devices. The paragraphs the defendants cite, ¶¶ 37-44, 67, 72, 80, 85, do not allege any of those things. The

3

Court need not take Plaintiffs' or Defendants' word for it, of course. Plaintiffs' allegations in those paragraphs are as follows:

37. A significant portion of the underlying foreign securities in the Defendants' portfolios are listed on foreign exchanges and trade during each market's respective session. The NAVs set by Defendants do not take into account on a daily basis any price relevant information that has become available in this two to fourteen and one/half hour interval, after the final prices for the underlying foreign securities have been posted but, prior to the setting of the NAVs. Such price relevant information impacts the valuation of these underlying foreign securities and is significant for valuation because the final market prices have become stale and do not reflect the current market value of the securities.

38. ***By failing to make daily adjustments*** based upon positive correlations between upward or downward movements in United States and foreign markets and by choosing to use stale prices in valuing their fund shares and setting their daily NAVs, ***Defendants have exposed long term shareholders to market timing traders*** who regularly purchase and redeem Defendants' shares as part of a profitable trading strategy. The market timing trading strategy stems from the ability of market timing traders to predict changes in the NAV. Market timing traders are able to predict changes in the NAV because of the positive correlations between value movements in United States markets and foreign markets. The stale price strategy of market timers who trade Defendants' shares is to buy shares on days when the United States market moves up and to sell (redeem) shares when the United States market moves down. In order to derive maximum benefit from price relevant information developed subsequent to the now stale closing prices of the portfolio securities, market timers wait until the fund deadline for buying or selling (redeeming) shares in Defendants' funds on any particular business day. Because Defendants cannot buy or sell the foreign securities in the funds' underlying portfolio (due to the time difference between New York and the home markets of the foreign securities) at the time it sets the daily NAV that values the shares it issues and redeems, the shares that Defendants issue to and redeem from market timers do not reflect current market prices of the foreign securities held by the fund.

39. Due to the ***use of stale prices by Defendants in valuing the fund shares***, market timers who buy Defendants' funds' shares on days when the United States market moves up are buying discounted shares at the expense of other fund shareholders because the funds underlying foreign securities assets are undervalued as of the time of the share purchase.

40. Due to the ***use of stale prices by Defendants in valuing their fund shares***, market timers who sell (redeem) Defendants' shares on days when the United States market moves down are selling (redeeming) shares at a premium at the expense of other fund shareholders because the underlying foreign securities assets are overvalued as of the time of the share sale (redemption).

41. Shares in Defendants' funds can be traded, either by purchase or redemption, only once a day at 4:00 p.m. Eastern Time.

42. The excess profits that are obtained by market timing traders' taking advantage of the stale pricing of Defendants' shares come at the expense of fellow shareholders who are non-trading long term buy and hold investors. The transfer of wealth from the non-trading long term buy and hold shareholders to the market timers trading Defendants shares in Defendants' funds occurs through dilution.

43. Market timing traders pay cash to Defendants funds when they purchase discounted shares. Market timing traders receive cash from Defendants funds when they sell (redeem) their shares at a premium. Defendants' fund NAV is diluted in both instances. When market timing traders are able to buy shares at a discount, Defendants' fund assets suffer dilution because the cash received by the fund for the shares purchased is less than the per share value of the underlying foreign securities because of the stale pricing utilized by Defendants. Likewise, when market timing traders are able to sell (redeem) shares at a premium, Defendants' fund assets suffer dilution because the cash paid out by the fund for the shares redeemed is more than the per share value of the underlying securities, again due to the stale pricing utilized by Defendants. In both instances, when Defendants receive less cash when issuing and pay out more cash when redeeming market timing trader shares than supported by the value of their underlying foreign securities, the result is a dilution of Defendants' cash. Since the cash held by the fund is one of the assets that is valued in setting the Defendants' daily fund NAV, it follows that the diluted fund cash position causes the fund NAV to be diluted as well. Due to the stale pricing utilized by Defendants, long term buy and hold shareholders have incurred a dilution in the NAV of their shares and the wealth represented by that diluted amount has been transferred to market timing traders.

44. *By failing to make daily adjustments* based upon positive correlations between upward movements in United States and foreign markets and by choosing to use stale prices in valuing the underlying foreign securities that are used setting their daily NAV, Defendants give market timing traders the opportunity to earn vastly higher returns at no additional risk. Unlike other market timing based trading, market timers who trade Defendants shares do not have to look into the future to time their purchases and redemptions of shares, rather, they have the luxury of being able to look backwards because Defendants' share pricing fails to adjust for recognized positive correlations and uses stale prices in valuing its underlying portfolio securities.

67. Defendant T. Rowe Price Funds operates T. Rowe Price International Fund as an open end mutual fund with the stated goal of providing long term capital growth to investors who hold shares of the fund. The fund expressly states in its prospectus that it seeks to achieve its investment goal through a policy of investing in stocks and debt obligations of companies outside of the United States.

72. Defendants knew, or were negligent in not knowing, that the closing prices for the foreign securities represented in the T. Rowe Price International Fund and used by Defendants to calculate NAV for said Fund did not represent fair value because, inter alia,

5

> those prices did not reflect changes in trading prices as a result of trading which Defendants knew, or were negligent in not knowing, occurred daily after the closing of the New York Stock Exchange.
>
> 80.  Defendant AIM Funds operates AIM European Fund as an open end mutual fund with the stated goal of providing long term capital growth to investors who hold shares of the fund.  The fund expressly states in its prospectus that it seeks to achieve its investment goal through a policy of investing in stocks and debt obligations of companies outside of the United States.
>
> 85.  Defendants knew, or were negligent in not knowing, that the closing prices for the foreign securities represented in the AIM European Fund and used by Defendants to calculate NAV for said Fund did not represent fair value because, inter alia, those prices did not reflect changes in trading prices as a result of trading which Defendants knew, or were negligent in not knowing, occurred daily after the closing of the New York Stock Exchange.

First Amended Complaint ¶¶ 37-44, 67, 72, 80, 85 (emphases added). Those are the allegations of the paragraphs to which T. Rowe Price and AIM cite, but they are not allegations of misrepresentations, material omissions or manipulation. That is undoubtedly the reason Defendants' "spin" rather than quote very much of Plaintiffs' allegations.

The misconduct Plaintiffs allege is not market manipulation or fraud at all. Rather, Plaintiffs have alleged that T. Rowe Price and AIM were negligent or reckless in failing to prohibit short-term market timing trading in the funds.

> 73.  Defendants breached their duties of due care owed to Plaintiff Woodbury and similarly situated owners of the T. Rowe Price International Fund by, inter alia:
>> i. *failing to properly evaluate on a daily basis* whether a significant event affecting the value of T. Rowe Price International's portfolio of securities had occurred after the foreign trading markets for such securities had closed but before Defendants calculated NAV and share prices;
>> ii. *failing to implement* T. Rowe Price International's portfolio valuation and share pricing policies and procedures; and
>> iii. *allowing portfolio valuation and share pricing policies and procedures which benefited market timing traders* of T. Rowe Price International's shares at the expense of long term shareholders.

First Amended Complaint, Count III (negligence claim against T. Rowe Price defendants) (emphases added).

6

      77. With utter indifference and conscious disregard for Plaintiff Woodbury's investment and the investments of similarly situated fund owners, Defendants willfully and wantonly breached their duties to Plaintiff Woodbury and similarly situated owners by, inter alia:

    i. ***failing to know and implement applicable rules and regulations*** concerning the calculation of NAV;

    ii. ***failing to properly evaluate on a daily basis*** whether a significant event affecting the value of T. Rowe Price International's portfolio of securities had occurred after the foreign trading markets for such securities had closed but before Defendants calculated NAV and share prices;

    iii. ***failing to implement*** T. Rowe Price International's portfolio valuation and share pricing policies and procedures; and

    iv. ***allowing portfolio valuation and share pricing policies and procedures which benefited market timing traders*** of T. Rowe Price International's shares at the expense of long term shareholders.

First Amended Complaint, Count IV (recklessness claim against T. Rowe Price defendants) (emphases added).

    In paragraph 86 of Count V and paragraph 90 of Count VI, Plaintiffs Stuart Allen Smith and Sharon Smith make the same allegations against AIM, alleging that AIM similarly 1) failed to know and implement applicable rules and regulations, 2) failed to properly evaluate on a daily basis whether a significant event had occurred, 3) failed to implement its portfolio valuation and share pricing policies and procedures; and 4) allowed portfolio valuation and share pricing policies and procedures which benefited market timing traders. Those are not allegations of fraud or market manipulation. *See* Plaintiffs' 1/24/07 Opposition to the Artisan Defendants' Motion to Dismiss at 6-7 (discussing the meaning of "manipulative or deceptive device or contrivance").

    Moreover, even if the allegations to which T. Rowe Price and AIM point could give rise to a claim of fraud, that does not mean Plaintiffs have alleged fraud. In another SLUSA case in which a defendant tried to recast a plaintiff's allegations as claims of fraud, the court wrote:

> Simply because the operative facts of a complaint *can* give rise to a claim of fraud does not mean that the complaint *must* be read as alleging fraud. To the contrary, a plaintiff is ordinarily free to choose the legal theories upon which she relies and to discard others.

7

> "Where the plaintiff's claim might be brought under either federal or state law, the plaintiff is normally free to ignore the federal question and rest his claim solely on the state ground. The choice of legal theories is a strategic choice to be made by plaintiff, and neither the court nor the defendant is permitted to override that choice.

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258, 268 (S.D.N.Y. 2004) (footnotes and citations omitted). T. Rowe Price and AIM should not be permitted to override the actual allegations of Plaintiffs' First Amended Complaint by recasting them as allegations the defendants *wish* Plaintiffs had made.

## Conclusion

While as Defendants note a plaintiff's characterization of his actual allegations of fraud will not save his claim from SLUSA's reach, neither will a defendant's characterization of a plaintiff's allegations of negligence or recklessness bring such claims within SLUSA's reach. SLUSA precludes certain class actions "by any private party alleging" misrepresentations, omissions or use of manipulative or deceptive devices or contrivances. 15 U.S.C. §§ 77p(b), 77bb(f)(1). The focus must therefore be on Plaintiffs' allegations. Defendants offer the Court their ***characterization*** of Plaintiffs' allegations, but they do not show the Court what Plaintiffs' allegations actually are. Plaintiffs just did, and their allegations are not allegations of misrepresentations, omissions or use of manipulative or deceptive devices or contrivances.

That issue, however, is ultimately one the state court should decide and which this Court should not reach—particularly in the case of T. Rowe Price and AIM. The Seventh Circuit has held that T. Rowe Price and AIM are bound by this Court's 2004 remand order, and that *Kircher II* did not constitute the kind of change in the law which might give them a right to re-remove the case. And if *Kircher II* does not constitute such a change in the law, then *Dabit* cannot be such a change either. The defendants have offered no rationale whatsoever for treating the two differently. Indeed, according to them, *Dabit* was "an unqualified endorsement to the

reasoning and rationale" of *Kircher II*. There is no principled reason for treating one case as a change in the law providing the defendants an opportunity to re-remove, while simultaneously treating the other case differently.

For all of the foregoing reasons, the Court should deny T. Rowe Price's and AIM's motion to dismiss.

Respectfully submitted,

By:  /s/ Robert L. King
    ROBERT L. KING
    701 Market Street, Suite 350
    St. Louis, Missouri 63101
    Phone: (314) 863-6902

    KOREIN TILLERY LLC
    Klint L. Bruno
    209 S. LaSalle Street, Suite 701
    Chicago, Illinois 60604
    kbruno@koreintillery.com
    Phone:  (312) 759-7510
    Fax:  (312) 759-7516

    KOREIN TILLERY LLC
    STEPHEN M. TILLERY
    10 Executive Woods Court
    Swansea, Illinois 62226
    Phone: (618) 277-1180
    Fax: (314) 241-3525

    KOREIN TILLERY LLC
    GEORGE A. ZELCS
    205 North Michigan Plaza
    Suite 1950
    Chicago, Illinois 60601
    Phone: (312) 641-9750
    Direct: (312) 641-9760
    Fax: (312) 641-9751

    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that service of the foregoing document was made by means of the Notice of Electronic Filing on January 31, 2007, to the following counsel of record:

**Richard K. Hunsaker**
Heyl, Royster et al.
103 West Vandalia Street
467
Edwardsville, IL 62025
618-656-4646
rhunsaker@hrva.com

**Martin I. Kaminsky**
**Edward T. McDermott**
**Daniel A. Pollack**
**Anthony Zaccaria**
Pollack & Kaminsky
114 West 47th Street
Suite 1900
New York, NY 10036-8295
212-575-4700
mikaminsky@pollacklawfirm.com
etmcdermott@pollacklawfirm.com
dapollack@pollacklawfirm.com
azaccaria@pollacklawfirm.com

**Gary A. Meadows**
Burroughs, Hepler et al.
103 West Vandalia Street, P.O. Box
Suite 300
Edwardsville, IL 62025-0510
618-656-0184
gam@ilmolaw.com

**Lisa M. Wood**
Armstrong Teasdale
One Metropolitan Square
211 North Broadway,
Suite 2600
St. Louis, MO 63102-2740
314-621-5070
lwood@armstrongteasdale.com

    /s/Robert L. King
ROBERT L. KING
701 Market Street, Suite 350
St. Louis, Missouri 63101
Phone: (314) 863-6902